UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN MILES, #200838,

                Petitioner,                    Civil Action No. 2:12-cv-12670
                                                          Honorable Nancy G. Edmunds

v.

THOMAS BIRKETT,

                Respondent.
_____/

**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO
PROCEED ON APPEAL IN FORMA PAUPERIS**

        This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner is held in custody by Respondent at the Ojibway Correctional Facility as a result of his 1990 and 1992 Wayne Circuit Court convictions for breaking and entering a building with intent to commit a felony, and his 2003 conviction for commission of a felony with a firearm. The petition does not challenge Petitioner's convictions or sentences. Rather, Petitioner asserts that his 2007 parole term was erroneously revoked. The Court will deny the petition because Petitioner's claims do not merit habeas relief. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed in forma pauperis on appeal.

Background

        Petitioner was released on parole on June 12, 2007. On November 14, 2009, Petitioner was alleged to have pointed a shotgun at one Clyde Givhans and threatened to kill him. He was arrested at the scene by the Detroit Police and charged with felonious assault, felon in possession of a

firearm, and commission of a felony with a firearm. Petitioner was tried and acquitted in the Wayne Circuit Court of these charges. According to Petitioner, the complainant's statement to police, his preliminary examination testimony, and his trial testimony were inconsistent with each other. As a result, the trial court found that the complainant's testimony not credible and effectively amounted to perjury. Respondent does not contest this characterization of the trial record or the trial court's decision.

Nevertheless, the Michigan Department of Corrections pursued parole revocation proceedings against Petitioner. The five-count parole revocation notice alleged that Petitioner engaged in behavior that was assaultive, abusive, threating and/or intimidating when he: (1) threatened to kill Clyde Givhans; (2) physically assaulted Givhans; (3) pointed a gun at Givhans; (4) possessed a shotgun; and (5) was involved in behavior which constitutes a violation of local, state, and/or federal law.

Petitioner was given written notice of the parole violation charges and hearing. Petitioner pled not guilty, and he was appointed counsel. A parole revocation hearing was held on April 14, 2010. The complainant, Clyde Givhans, testified to the events that led to Petitioner's charges, and Petitioner testified in his own defense. The record indicates that the hearing officer was informed that Petitioner had been acquitted of the criminal charges.

After summarizing the hearing testimony and evidence the hearing officer made the following written findings of fact and conclusions of law:

> The state has established by a preponderance of the evidence that P is guilty of counts 1, 2, 3, & 4. Count 5 was dismissed by OFP for due process. The evidence established by the testimony of witness Clyde Givhans, that parolee did threaten Mr Givhans both verbally and then with a weapon in P's possession to wit: a single barrel shot gun. The parolee's own testimony further established the he-the P, confronted the witness, Givhans on the date in question concerning a video. Parolee

2

also testified on cross that there was adequate time prior to police arriving, for the weapon to have been hidden. In fact the weapon was never discovered subsequent to the assault. The police report prepared by Officer Guyton, of DPD, was admitted without objection and contradicted important details testified to by parolee. P testified that he was the victim, and had called police as Givhans had pointed a firearm on him. The police report clearly indicates that when police arrived and confronted the parolee, he clearly stated that he had not called the police, but "was getting ready to." Further, the police report documents that the parolee had a cell phone in his hand when officers arrived, contradicting parolee's testimony that he asked his fiancée inside their apartment to call the police. With his cell phone in hand, if parolee had really been the victim of the assault, he would and could have called 911 with his own cell phone. Further, the police report documents that when officers encountered parolee, it was in the east stairwell onto the second floor of the building, and "P was sweating with keys and cell phone in hand." Clearly this information is consistent with Mr. Givhan's testimony that the P, following a conflict regarding a video tape, "ran" into the building, retrieved a shot gun and pointed it at the witness stating "I [sic] going to kill you." It was the parolee who was sweaty from "running" in order to retrieve the shotgun, and then hiding it, not the witness, Givhans. The statements of Mr. Givhans' that parolee ran to retrieve a shotgun, upon uttering the words- "I have two 40's with your name on it" are deemed by this trier of fact as both credible and believable. It was parolee who had motive to lie and hide his behavior-not witness Givhans. Parolee does not dispute that a shotgun was at the scene prior to the officer's arriving, he only says the shotgun had been pointed at me and then disposed of. His testimony is found by this PBM as not credible and untrue. Counts 1, 2, 3, & 4 are established by a preponderance of the evidence. It is important to note that Mr. Givhans clearly described the shotgun that parolee chased and threatened him with. Parolee, although identifying a "gun" to police-at no time identified the gun to law enforcement as a "shotgun." In fact parolee testified at this hearing that he owned no guns and "didn't know nothing" about guns, as he wasn't a "gun guy." It is interesting to note that P is on his D prefix for felony firearms, and clearly knew something about guns and firearms in his prior experience. P presents a risk currently. His assaultive behavior with shotgun is a risk to the community. This PBM recommends that P be continued.

Michigan Parole Board Record, p. 14.

As a result of his parole violation, Petitioner was returned to prison and was found to be ineligible for parole for a period of five years.

Petitioner then filed a petition for judicial review in the Wayne Circuit Court, but on March 30, 2011, the trial court issued an opinion and order denying it.

Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, and raised the following claims:

I. The circuit court erred as a matter of law in interpreting and applying MCL 791.240a and Morrissey v Brewer and failed to provide a written explanation denying all issues with supporting authority without reviewing the whole record.

II. Petitioner's acquittal of state criminal charges removed all factual support for parole revocation which estopped defendant from relitigating and/or asserting inconsistent statements and testimony in subsequent proceedings for possession of a weapon.

III. Petitioner's statutory and due process right was violated when he was denied an opportunity to present rebuttal and impeachment evidence and make arguments in defense of the charges.

IV. Petitioner's was constructively denied the effective assistance of counsel in defense of the parole revocation violation charges and revocation hearing.

On September 26, 2011, the Michigan Court of Appeals denied Miles' application for lack of merit in the grounds presented. *Miles v. Michigan Parole Board*, No. 303983 (Mich. Ct. App. September 26, 2011).

Miles then filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims, but the application was denied by form order. *Miles v. Michigan Parole Board*, 491 Mich. 886 (2012) (table).

Petitioner raises the following claims in his petition:

I. Petitioner's statutory and constitutional due process rights were violated when he was denied an opportunity to submit and argue rebuttal and impeachment evidence into his parole revocation hearing.

II. Petitioner's acquittal of state charges removed all factual support for revocation which estopped the (M.D.O.C.) defendant from relitigating for a firearm, and/or asserting inconsistent, perjurous statements and testimony in subsequent proceedings.

III. Petitioner was denied his constitutional Sixth Amendment right to effective

4

assistance of counsel in defense of the parole revocation violation charges and revocation hearing.

Standard of Review

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id*. at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Wingard*, 269 F.3d 629 (6th Cir. 2001).

## Discussion

In *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972), the Supreme Court held that individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections. The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written

6

> statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*. at 489. The Court emphasized, however, that the parole revocation hearing should not be equated with a full criminal trial. *Id*. Rather, the process should be flexible and may take into consideration evidence that would not necessarily be admissible in an adversary criminal proceeding. *Id*.

The Supreme Court has never articulated the precise standard by which findings of a parole violation must be proven in administrative proceedings. In the related area of prison disciplinary proceedings, which can also result in a deprivation of liberty, the Supreme Court requires only that "some evidence" support the administrative finding. See *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Most lower courts have applied the *Hill* standard to parole revocation proceedings. See, e.g., *Caswell v. Calderon*, 363 F.3d 832, 839 (9th Cir. 2004); *Phifer v. Clark*, 115 F.3d 496, 501 (7th Cir. 1997); *Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993); *Kimberlin v. Dewalt*, 12 F. Supp. 2d 487, 489 (D. Md. 1998).


A. Right to Present Evidence at Parole Revocation Hearing

Petitioner first asserts that his right under *Morrissey* to present documentary evidence was violated when the hearing officer refused to consider or order the production of the transcripts from Petitioner's criminal case, in which he asserts that the complainant made inconsistent statements regarding the incident.

The record of the revocation proceeding shows that Petitioner's counsel cross-examined Givhans regarding inconsistencies between his testimony at the revocation hearing and his statement to police. Givhans was challenged regarding inconsistencies about prior altercations with Petitioner and whether Petitioner pointed the gun at him or not. Petitioner does not state with particularity

whether there are additional inconsistencies contained in the trial transcripts. In any event, it is clear that the hearing officer was made aware of the fact that the complaining witness's version of events did change to some extent over time. In the end, the hearing officer based his decision on the fact that Petitioner's description of the events was not credible, and that Givhans was credible and had no reason to lie about the incident.

The Michigan Court of Appeals was presented with this claim in Petitioner's state court appeal, and the state court determined that Petitioner's application "lacked merit." This brief determination is entitled to full AEDPA deference. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012); *Hardaway v. Robinson*, 655 F. 3d 445, 447, 449, n. 1 (6th Cir. 2011).

Given that parolees have fewer rights in parole revocation hearings than defendants do in criminal trials, the state court of appeals did not unreasonably apply *Morrissey*. See *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 776 (6th Cir. 2008). It is true that Petitioner had a right under *Morrissey* to present evidence in his defense. But neither *Morrissey* nor any other Supreme Court authority indicates the breadth of the right to present defense evidence at a revocation hearing. Even in criminal trials, where a defendant's protections are much more robust, a defendant's right to present evidence may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). It stands to reason that, given the flexible and informal nature of such proceedings, a hearing officer at a revocation proceeding  may exclude defense evidence that a defendant would have been entitled to present at a criminal trial.

Here, a reasonable argument can be made that Petitioner was allowed to present enough evidence at his revocation hearing to present the essential aspects of his defense. He testified in his own defense about his version of evidence, and his counsel cross-examined the complainant and

8

challenged his credibility. Petitioner's counsel was also allowed to use the police reports to demonstrate inconsistencies in the complainant's story. Petitioner was only prohibited from obtaining a transcript of his preliminary examination and criminal trial to more thoroughly conduct a cross examination. Had this been a criminal trial, a substantial right-to-present-a-defense claim would be presented. But under *Morrissey*, parolees are not entitled to the same degree of procedural protection during parole revocation hearings. Therefore, even assuming the transcripts contained additional impeachment material, it was not objectively unreasonable for the state appellate court to decided that the hearing officer properly limited the material Petitioner was entitled to use in his defense. See *Williams v. Johnson*, 171 F.3d 300, 306-08 (5th Cir. 1999) (affirming the denial of habeas relief when the alleged error in refusing to allow a parole officer to testify at the parole revocation hearing was harmless).

Accordingly, the Court finds that Petitioner has not demonstrated entitlement to relief with respect to this claim.

B. Effect of Petitioner's Acquittal

Petitioner next asserts that the Wayne Circuit Court Judge's finding that the complainant was not credible was binding on the parole revocation hearing officer.

The *Morrissey* court emphasized that the parole revocation hearing should not be equated with a full criminal prosecution. *Id*. Because the revocation of parole is not part of a criminal prosecution, parolees are not entitled to the full panoply of rights given to defendants in criminal proceedings. *Id*. at 480. Unlike criminal proceedings, a parolee need not be found guilty beyond a reasonable doubt before having his parole revoked; rather, the revocation of parole is proper when

supported merely by reasonable grounds. *Morrissey*, 408 U.S. at 490. As a consequence, a criminal acquittal does not bar a subsequent parole revocation proceeding. *Steinberg v. Police Court of Albany*, 610 F.2d 449, 451-52 (6th Cir. 1979);  see also *Taylor v. United States Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984) (holding that the parole board may find a parole violation based on its own conclusion that new criminal activity occurred, even if the parolee was acquitted of the underlying criminal charges).

Accordingly, the fact that the trial judge acquitted Petitioner of the criminal charges had no bearing on the revocation proceeding. Even to establish that the trial court's finding that the complainant was not credible collaterally estopped the hearing officer from relying on his testimony to find a violation, Petitioner has "the burden of showing that any issue in the present litigation as to which he seeks preclusion is identical to the one that was decided" earlier. *Crawford v. Jackson*, 323 F.3d 123 (D.C. Cir. 2003), citing *Hogue v. Hopper*, 728 A.2d 611, 615 (D.C. 1999). Here, the trial court was viewing the complainant's credibility through the lens of determining whether the prosecutor had established Petitioner's guilt beyond a reasonable doubt. At the revocation hearing, the hearing officer was only tasked to determine whether reasonable grounds existed for finding a parole violation. Because the issues were not identical, the hearing officer was not bound by the trial court's findings.  The claim is without merit.


C. Ineffective Assistance of Counsel

Finally, Petitioner asserts that he received ineffective assistance of counsel at his parole revocation hearing.

The Sixth Amendment constitutional right to counsel generally does not attach to parole

10

revocation hearings. See *Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 n. 5 (1998)

(citing *Gagnon v. Scarpelli*, 411 U .S. 778, 787 (1973)). However, under certain circumstances the

Due Process Clause grants an offender the right to appointed counsel at his revocation hearing. See

*Gagnon*, 411 U.S. at 787. "[T]he decision as to the need for counsel must be made on a case-by-case

basis in the exercise of a sound discretion by the state authority charged with responsibility for

administering the probation and parole system." *Id*. at 790. Counsel should "presumptively" be

appointed where the probationer requests counsel:

> based on a timely and colorable claim (i) that he has not committed the alleged
> violation of the conditions upon which he is at liberty; or (ii) that, even if the
> violation is a matter of public record or is uncontested, there are substantial reasons
> which justified or mitigated the violation and make revocation inappropriate, and
> that the reasons are complex or otherwise difficult to develop or present.

*Id*. In doubtful cases, courts may also weigh the inability of the accused to speak effectively on his

own behalf. *Gagnon*, 411 U.S. at 790–91. Nevertheless, the "participation of counsel will probably

be both undesirable and constitutionally unnecessary in most revocation hearings." *Id*. at 790.

  As noted above, appointed counsel represented Petitioner, but he did so pursuant to a state

rule. The appointment itself did not involve application of a *Gagnon* review. The discretionary

appointment of counsel does not give rise to a constitutional right to counsel, nor the concomitant

constitutional right to the effective assistance of counsel. *United States v. Lester*, 1996 WL 28970,

at *3 (6th Cir. 1996); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (holding that no right to

effective counsel exists absent a constitutional right to counsel). Accordingly, because Petitioner did

not establish a constitutional right to the appointment of counsel at his revocation hearing, he cannot

demonstrate that he was denied the effective assistance of counsel.

11

Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

Conclusion

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.


S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 5, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 5, 2013, by electronic and/or ordinary mail.

S/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol A. Hemeyer

13